## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| April R. on behalf of S.I., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 22-cv-50126 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Leland Dudek | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, April R., on behalf of the claimant, S.I., seeks review of the final decision of the Commissioner of the Social Security Administration which concluded that, as of July 1, 2018, S.I. was no longer disabled. For the reasons set forth below, the Court affirms the Commissioner's decision.

## BACKGROUND

On May 2, 2015, the Social Security Administration ("SSA") found that the claimant was disabled as of February 11, 2015. R. 15, 18, 116. At that time, the SSA determined that the claimant had impairments that medically equaled listing 2.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (loss of speech). R. 18, 92. After conducting a review of the claimant's continued eligibility for disability benefits, the SSA determined that as of July 1, 2018, the claimant was no longer disabled. R. 15, 112. A state agency disability hearing officer upheld that determination after a disability hearing. R. 15, 137-144. A written request for a hearing before an Administrative Law Judge ("ALJ") was filed on the claimant's behalf and ALJ Lovert Bassett held a telephonic hearing on June 14, 2021. R. 15, 150, 227. Plaintiff appeared on behalf of her child, the claimant, represented by counsel. *Id*. Faren R. Akins, Ph.D., an impartial medical expert, appeared and testified. *Id*. On July 20, 2021, the ALJ issued a written opinion determining that the claimant's disability ended as of July 1, 2018, and that the claimant had not become disabled again since that date. R. 15-26. The Appeals Council denied a request for review of the ALJ's decision. R. 1-4. Plaintiff, on the claimant's behalf, now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [5]. Now before the Court are Plaintiff's motion for summary judgment [9], the Defendant's motion for summary judgment [14], and Plaintiff's reply brief [16].

---

[1] Leland Dudek has been substituted for Kilolo Kijakazi. Fed. R. Civ. P. 25(d).

**STANDARD OF REVIEW**

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted). *See also Warnell*, 97 F.4th at 1054.

The Court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The Court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

**DISCUSSION**

Plaintiff argues that the ALJ erred in evaluating (1) the claimant's limitations in three domains of functioning, (2) the claimant's subjective symptoms, and (3) the medical opinion of the impartial medical expert, Dr. Faren Akins, Ph.D.[2] The Court finds that the ALJ's analyses of the claimant's limitations and his subjective symptoms were supported by substantial evidence and that the ALJ properly evaluated the impartial medical expert's opinion.

**A. Claimant's Limitations**

To determine whether a child's disability has continued, ALJs first consider whether medical improvement has occurred since the most recent decision finding the child disabled ("comparison point decision"). 20 C.F.R. § 416.994a(b). If medical improvement has occurred, ALJs must next decide whether the impairments the child had at the time of the comparison point decision still meet, medically equal, or functionally equal the severity of the listing they met or equaled at the time of the comparison point decision. *Id*. If the impairments no longer meet,

---

[2] In her reply brief, Plaintiff also seems to challenge the ALJ's finding of medical improvement. Plaintiff did not raise this argument in her opening brief and therefore it is waived. *See Malgorzata v. Kijakazi*, No. 20CV296, 2022 WL 2257122, at *3 (N.D. Ill. June 23, 2022) ("It is well established that arguments are waived if not raised in the opening brief."). Even if the argument was not waived, the Court finds that the ALJ supported his finding of medical improvement as of July 1, 2018 with substantial evidence. R. 19-20.

medically equal, or functionally equal the listing, ALJs consider whether the child is currently disabled pursuant to 20 C.F.R. § 416.924. To find a child disabled, ALJs must find that the child has a severe medically determinable impairment which meets, medically equals, or functionally equals the listings of 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924.

The most recent decision finding the claimant disabled was dated May 2, 2015 ("2015 decision"). R. 18. At the time of that decision, the claimant had a speech impairment which medically equaled Listing 2.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (loss of speech). R. 18-19, 92. The ALJ found that medical improvement occurred as of July 1, 2018. R. 19-20. The ALJ determined that since July 1, 2018, the claimant's speech impairment did not meet, medically equal, or functionally equal the severity of Listing 2.09. R. 20-26.

After determining that the claimant's impairment no longer met or equaled Listing 2.09 and that his disability had therefore not continued, the ALJ considered whether the claimant satisfied the disability requirements for any current impairments pursuant to 20 C.F.R. § 416.924. The ALJ found that since July 1, 2018, the claimant had the following severe impairments: attention deficit hyperactivity disorder ("ADHD") and low average IQ. R. 26. Then he determined that since July 1, 2018, the claimant had not suffered from an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 26-37. Therefore, the ALJ concluded that the claimant's disability ended as of July 1, 2018, and that he had not become disabled again since that date. R. 37.

To functionally equal a listing, an impairment (or combination of impairments) must result in a "marked" limitation in two "domains" of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. ALJs evaluate a child's ability to function in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id*. A marked limitation is a limitation that is more than moderate; an ALJ will find that a child has a marked limitation when a child's impairments "interfere[] seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id*. The ALJ analyzed the claimant's limitations in these domains twice. He first analyzed these domains when considering whether the speech impairment that the claimant had at the time of the 2015 decision continued to functionally equal Listing 2.09. R. 20-26. He then subsequently evaluated the claimant's limitations in these domains when considering whether the claimant's impairments since July 1, 2018 functionally equaled a listing.

Plaintiff generally argues that the ALJ did not support with substantial evidence the conclusions that the claimant had less than marked limitations in three domains: acquiring and using information, attending and completing tasks, and interacting and relating with others. The domain of acquiring and using information encompasses a child's ability to learn and think. 20 C.F.R. § 416.926a. The Social Security regulations indicate that in this domain, a school-age child should be able to learn how to read, write, do math, and discuss history and science. *Id*. A child should also be able to use increasingly complex language to share information. *Id*. The domain of attending and completing tasks considers how well a child can "focus and maintain [] attention" as well as a child's ability to "begin, carry through, and finish [] activities." *Id*. The Social Security

3

regulations state that school-age children should be able to "follow directions, remember and organize [] school materials, and complete classroom and homework assignments." *Id*. The domain of interacting and relating with others involves a child's ability to "initiate and sustain emotional connections with others, . . . comply with rules, [and] respond to criticism." *Id*. According to the regulations, school-age children should be able to develop friendships, work in groups, and talk to people of all ages. *Id*.

Plaintiff does not specify whether her argument is that the ALJ erred in his analysis of the claimant's limitations in these domains when he considered (1) whether the claimant's speech impairment continued to functionally equal Listing 2.09, (2) whether the claimant's impairments since July 1, 2018, functionally equaled any listing, or (3) both. In the absence of further specification, the Court considers whether the ALJ erred in either analysis.

The ALJ concluded that, since July 1, 2018, the claimant had less than marked limitations in acquiring and using information due to the speech impairment which he had at the time of the 2015 decision. R. 21. To support this determination, the ALJ noted that at a June 28, 2018 consultative examination, the claimant gave "mature, articulate answers in verbal comprehension queries." R. 22, 701. He considered records which indicated that the claimant had made significant progress in his speech goals, including the May 2018 opinion of the school speech pathologist that the claimant was ninety-five percent intelligible to a familiar listener and ninety percent intelligible to an unfamiliar listener. R. 22, 348, 350. He acknowledged the claimant's ongoing need for speech language therapy but noted that the claimant's speech language therapy minutes had significantly decreased. R. 22, 438. The ALJ determined that the claimant "continue[d] to have decreased intelligibility at times" but that this speech impairment only caused less than marked limitations in the domain of acquiring and using information. R. 22.

The ALJ similarly concluded that the claimant's impairments since July 1, 2018, including his ADHD and low average IQ, resulted in less than marked limitations in acquiring and using information. R. 35. The ALJ first considered that teacher questionnaires indicated that the claimant had a number of serious problems in this domain but noted that one of the teacher questionnaires stated that, "once [the claimant] learns something well, he can recall and apply." R. 35, 340. He considered the fact that the claimant gave mature and articulate answers at a consultative examination and that a mental status examination evaluated the claimant's cognition as normal. R. 35, 896, 701. The ALJ acknowledged the claimant's below-grade-level performance on assessments but emphasized that the claimant had continued improvement on assessments, was doing grade level math with no modifications or special education, and never repeated a grade level. R. 35, 827. Finally, the ALJ gave great weight to the opinions of four state agency consultants and the independent medical expert that the claimant had less than marked limitations in this domain. R. 32-33. After weighing this evidence, the ALJ found that the claimant had a limitation in this domain, but that the limitation did not seriously interfere with his functioning in relevant activities and therefore was not marked.

Plaintiff argues that the ALJ did not support these conclusions with substantial evidence because the ALJ failed to discuss evidence favorable to the claimant. She claims that the ALJ did not consider findings from a July 2018 function report which indicated that the claimant could not tell jokes or deliver telephone messages. R. 372. Although the ALJ did not discuss those specific

findings, the ALJ did cite to that function report. R. 22. "An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1054. Plaintiff also argues that the ALJ ignored the fact that the claimant was unable to ask for help in school or be understood by an unfamiliar listener. However, the teacher questionnaire she cites to stated that the claimant sometimes, "just does what he thinks rather than asking for help or clarification." R. 498. This does not indicate that the claimant was unable to ask for help. Additionally, as the ALJ cited, the claimant was ninety percent intelligible to an unfamiliar listener according to a speech language pathologist. R. 22, 348. The ALJ acknowledged that the claimant received special education in reading and writing. R. 31. He also cited assessments which indicated that the claimant had serious problems with reading and writing, but also showed improvement. R. 35, 422. In addition, the domain of acquiring and using information is not restricted to reading ability. *See* 20 C.F.R. § 416.926a. The ALJ was entitled to weigh the claimant's performance in reading against his abilities in other areas, including math and oral comprehension. R. 35. This Court cannot "reweigh the evidence . . . so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). After reviewing the ALJ's determination, the Court concludes that substantial evidence, particularly the claimant's continued improvement in all assessments, the lack of serious problems with his math abilities, and the medical opinions of the state agency consultants and the independent medical expert supported the ALJ's decision. *See M.M.M. on behalf of J.M.M. v. O'Malley*, No. 23CV2134, 2024 WL 4265201, at *6-7 (N.D. Ill. Sept. 23, 2024).

The ALJ next concluded that, since July 1, 2018, the claimant had less than marked limitations in attending and completing tasks due to the speech impairment which he had at the time of the 2015 decision. R. 22-23. To support this determination, the ALJ relied on the assessments of the state agency consultants and the fact that the claimant had improved intelligibility. R. 23.

The ALJ similarly determined that all the claimant's impairments since July 1, 2018 posed less than marked limitations in the domain of attending and completing tasks. R. 35-36. The ALJ stated that the claimant's ADHD was well-controlled while on medication and that the claimant's IEPs consistently reflected improvement in his ability to focus. R. 35, 422, 449, 470. The ALJ did also consider three teacher questionnaires which indicated that the claimant had serious problems in this domain, although he noted that none indicated that the claimant had serious, or even obvious, problems in every aspect of the domain. R. 35, 341, 383, 499. He discussed treatment notes which noted the claimant's issues with hyperactivity and frustration tolerance. R. 35, 895. Based on all the evidence, the ALJ concluded that the claimant had a limitation in this domain but that it was less than marked.

Plaintiff argues that the ALJ did not support these conclusions with substantial evidence because the ALJ improperly relied on the claimant's improvement in this domain. When an ALJ supports an evaluation of a claimant's limitations with reports of improved functioning, "[t]he key is not whether [the claimant] has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). In this case, the ALJ did not just rely on reports of improvement but emphasized that, according to the IEPs, the claimant improved to the extent that he only "occasionally" found things to distract him. R. 36, 423, 470. He also relied on the fact that the

claimant's ADHD was well-controlled on medication and that the claimant's teachers did not mark him as having serious or obvious problems in every aspect of this domain, noting that of the thirteen listed categories in this domain, the May 2018 teacher questionnaire marked the claimant as having three serious problems, the October 2018 teacher questionnaire marked the claimant as having two serious problems, and the 2021 teacher questionnaire marked him as having two serious problems and two very serious problems. R. 35, 341, 383, 499. While Plaintiff may disagree with the ALJ's evaluation of the evidence, this Court cannot "reweigh the evidence." *Gedatus*, 994 F.3d at 900. The Court concludes that the ALJ sufficiently supported his finding that the claimant had less than marked limitations in this domain.

As for the third domain in which Plaintiff claims error, the ALJ concluded that, since July 1, 2018, the claimant had less than marked limitations in interacting and relating with others due to the speech impairment which he had at the time of the 2015 decision. R. 23-24. The ALJ acknowledged records which noted the claimant's frustration with how his speech impairment interfered with his communication with his peers. However, he also cited to evidence describing the claimant as polite, respectful, sweet, well-mannered, and helpful to his teachers and classmates. R. 23, 619, 856. Additionally, he noted that the claimant worked well in groups, was well-liked, and had friends. R. 23, 620, 700. The ALJ concluded that although the claimant still had some decreased intelligibility, his limitations were less than marked in this domain.

As for the claimant's impairments since July 1, 2018, the ALJ found that those impairments caused less than marked limitations in the domain of interacting and relating to others. R. 36. The ALJ noted that the two 2018 teacher questionnaires marked that the claimant had some problems in this domain. R. 36, 342, 384. However, he found that the claimant's IEPs continued to report that the claimant was social, friendly, helpful, well-liked, and generally interacted appropriately. R. 36, 619, 828. He also considered that the claimant's mother testified that the claimant had friends. R. 36, 50. The ALJ found that the claimant had a limitation in this domain, but he determined that the limitation did not seriously interfere with the claimant's functioning in relevant activities.

Plaintiff argues that the ALJ erred in his evaluation of the claimant's ability to interact and relate with others because the ALJ did not properly discuss the state agency consultant Dr. Hudspeth's opinion that the claimant's functioning in this domain was marked. It is unclear whether Plaintiff is referring to the opinion of state agency medical consultant Dr. Lionel Hudspeth, Psy.D., or the opinion of state agency medical consultant Dr. Donna Hudspeth, Psy.D. In the absence of further specification, the Court considers the ALJ's discussion of both opinions. On July 10, 2018, Dr. Lionel Hudspeth concluded that the claimant had marked limitations in the domain of interacting and relating with others. R. 106. On October 27, 2018, Dr. Donna Hudspeth came to the same conclusion. R. 709. The ALJ considered these opinions but found the findings not supported and inconsistent with the record based on:

> IEPs, teacher questionnaires and medical records noting few, if any, concerns regarding the claimant's social skills (23F/3, 5), that the claimant was well-liked by peers, was helpful, showed compassion for others (21F/5, 9), was becoming more confident (21E/3), had greatly improved his speech rate (21F/10), had positive peer interactions and participated in classroom (21F/28), interacted with his peers

appropriately for the most part (8F/4).

R. 32-33. The ALJ therefore gave the opinions about the claimant's limitations in interacting and relating with others little weight.[3] The Court concludes that the ALJ adequately considered the regulatory factors and provided sufficient explanation as to why he found the opinions unpersuasive. 20 C.F.R. § 416.927. *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("If the ALJ discounts the [the medical source's] opinion after considering [the regulatory] factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his reasons – a very deferential standard that we have, in fact, deemed 'lax.'"). Plaintiff makes other arguments taking issue with the ALJ's discussion of the claimant's limitations in this domain, but the Court finds that the ALJ relied on substantial evidence in the record when evaluating the claimant's limitations and logically articulated the connection between that evidence and his conclusions.

Even if the ALJ did err in finding that the claimant had less than marked limitations in any of these three domains, any error was harmless. To functionally equal a listing, a claimant must have marked limitations in two domains or an extreme limitation in one. 20 C.F.R. § 416.926a. Even if the ALJ erred in finding that the claimant's limitations were less than marked in one of these three domains, there was substantial evidence to support the ALJ's findings that the limitations were not extreme and that the claimant did not have marked limitations in more than one domain. *See Buckhanon ex rel. J.H. v. Astrue*, 368 Fed. Appx. 674, 680 (7th Cir. 2010).

## B. Subjective Symptoms

Next, Plaintiff argues that the ALJ erred in evaluating the claimant's subjective symptoms. ALJs are required to evaluate a claimant's symptoms through a two-step process. SSR 16-3p. First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Next, the ALJ must evaluate the intensity and persistence of the child's symptoms to "determine the extent to which an individual's symptoms limit his or her ability to . . . function independently, appropriately, and effectively in an age-appropriate manner." *Id*.

The claimant did not testify about his symptoms at the hearing, but his mother did testify. R. 48-88. The ALJ discussed her testimony. Then, after "considering the evidence of record," the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." R. 28. However, he concluded that "the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely consistent with the objective medical and other evidence." *Id*. The ALJ went on to thoroughly discuss the evidence of record, including teacher questionnaires, treatment notes, IEPs, and medical opinions.

Plaintiff claims that the ALJ did not cite to specific instances in the record to support his subjective symptom analysis. However, the Social Security Regulations provide that ALJs evaluate a child's subjective symptoms "when [they] rate how a child's impairment-related symptoms affect his or her ability to function independently, appropriately, and effectively in an age-appropriate manner in each functional domain." SSR. 16-3p. As already discussed, the ALJ

---

[3] The ALJ explicitly gave Dr. Lionel Hudspeth's opinion little weight. R. 32. The ALJ just noted that he found Dr. Donna Hudspeth's opinion of marked damages in this domain "not supported." R. 33

thoroughly analyzed the claimant's functioning in each of the six domains twice, reviewing the medical evidence and the extent to which the claimant's symptoms affected his functioning in each domain. R. 21-37.

Plaintiff also argues that the ALJ applied the wrong standard to evaluate the claimant's subjective symptoms because the ALJ stated that the "claimant's symptoms are not entirely consistent with the objective medical evidence." R. 28. According to Plaintiff, the ALJ should have evaluated whether the claimant's alleged symptoms could "reasonably" be accepted as consistent with the objective medical evidence, not whether they were entirely consistent. R. 28. The Seventh Circuit has previously stated that an ALJ's finding that a claimant's subjective symptoms were "not entirely consistent with the medical evidence" was "a polite way to say the weight of the evidence did not support [the] claims." *Gedatus*, 994 F.3d at 900. The same is true here, especially because, at the beginning of his evaluation of whether the claimant's impairments since July 1, 2018 functionally equaled a listing, the ALJ noted,

> In determining the degree of limitation in each of the six functional domains for the period since July 1, 2018, the undersigned has considered all symptoms and <u>the extent to which these symptoms can reasonably be accepted as consistent</u> with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p.

R. 27 (emphasis added). The ALJ went on to evaluate the claimant's symptoms and the medical evidence in the record. The Court finds no error.

## C. Medical Opinion

Finally, Plaintiff claims that the ALJ improperly analyzed the opinion of the independent medical expert, Dr. Faren Akins, Ph.D. Plaintiff argues that the ALJ should have requested updated answers from the medical expert because, at the time of the hearing, the medical expert only briefly reviewed updated school records and did not have the opportunity to review a teacher questionnaire from the claimant's most recent teacher as it was not completed until after the hearing. R. 84. Although Plaintiff faults the ALJ for not requesting further testimony from the medical expert, there was no requirement that the ALJ do so. *See Bertaud v. O'Malley*, 88 F.4th 1242, 1245 (7th Cir. 2023) ("[T]he reviewing court defers to the ALJ on the question of how much evidence must be gathered."). "Deference comes from the practical reality that no record is 'complete' – one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on." *Id.* (internal quotation marks and citations omitted). The Court also notes that Plaintiff could have asked the medical expert additional questions and was invited by the medical expert to do so. R. 77. The ALJ found Dr. Akins's opinion supported and consistent with the record as a whole. R. 34. The Court concludes that the ALJ properly supported his decision to give Dr. Akins's opinion great weight. The ALJ did not err by failing to ask the medical expert further questions.

## CONCLUSION

The decision below is affirmed. Final judgment will be entered accordingly.

Date:   March 19, 2025                    ENTER:

_Margaret J. Schneider_
United States Magistrate Judge